UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| STEPHEN LABOLLITA and<br>JENNIFER LABOLLITA,<br><br>    Plaintiffs,<br><br>v.<br><br>HOME RENTAL CONNECTIONS LTD.<br>d/b/a PARIS RENTAL CONNECTIONS<br>and HELIOS VIDAL,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 16-11433-LTS |

ORDER ON MOTION TO SET ASIDE DEFAULT JUDGMENT (DOC. NO. 25) AND
MOTION TO DISMISS (DOC. NO. 30)

June 13, 2017

SOROKIN, J.

Plaintiffs Stephen and Jennifer LaBollita sued Home Rental Connections and Helios Vidal over injuries Stephen suffered during a trip to Paris. Defendant HRC filed a motion to set aside the default judgment entered by this court because this Court lacks personal jurisdiction over HRC. Doc. No. 25. Plaintiffs opposed, Doc. No. 36, HRC replied, Doc. No. 45, and Plaintiffs filed a surreply, Doc. No. 51. Vidal filed a Motion to Dismiss for lack of personal jurisdiction. Doc. No. 30. Plaintiffs opposed, Doc. No. 37, both Defendants replied, Doc. No. 37, and Plaintiffs filed a surreply, Doc. No. 51. The Court held a hearing on May 31, 2017. Doc. No. 56. The Court ALLOWS the Motion to Set Aside Default Judgment, Doc. No. 25, and the Motion to Dismiss, Doc. No. 30.[1]

---

[1] HRC's Motion argued a lack of personal jurisdiction and Plaintiffs' opposition to both HRC and Vidal's motions advanced reasons why the Court should find personal jurisdiction over both Defendants and not dismiss the Complaint. Thus, the question of whether Plaintiffs established

1

## FACTS[2]

Plaintiffs Stephen and Jennifer LaBollita are Massachusetts residents. In 2013 they were were planning a vacation in Paris. Doc. No. 1 at 3. Defendant Paris Rental Connections is an alternate name for Home Rental Connections (HRC). Id. at 1. HRC is located in London. Id. HRC advertises apartments (as well as other types of properties) for owners including Defendant Helios Vidal. Vidal, a French resident, owns the "French Flair" apartment in Paris. Id. at 2–3. HRC advertises properties online through websites including Slow Travel, TripAdvisor, HomeAway, Rent by Owner, Airbnb, YouTube, Facebook, Twitter, and Instagram. Id. at 2. Plaintiffs read reviews written in English by Americans including Massachusetts residents. While those websites can be accessed from Massachusetts, HRC does not target Massachusetts or its consumers specifically. Doc. No. 27 at 2.

In early 2013 Plaintiffs searched online for an apartment to rent for their trip to Paris in July 2013 and found the Paris Rental Connections website. Doc. No. 1 at 3. After reading online reviews on multiple websites, including the Paris Rental Connections website, Plaintiffs filled out an online inquiry form on the Paris Rental Connections website stating their interest in one or more properties, their contact information including the city that they lived in, and their vacation dates. Doc. No. 1 at 3; Doc. No. 38-1 at 136. An HRC representative emailed Plaintiffs in response. Doc. No. 1 at 3. After a few emails back and forth, Plaintiffs and HRC agreed that Plaintiff would rent the French Flair apartment in Paris owned by Vidal on July 11, 2013 for seven nights. Id. Plaintiffs and HRC executed by email a form contract with the dates, apartment,

---

personal jurisdiction over HRC has been fully briefed by all parties. Accordingly, the Court has resolved the personal jurisdiction question as to both Defendants.

[2] Facts are taken from the Complaint, Doc. No. 1, as well as the jurisdictional filings where consideration of those filings is appropriate.

amount and other similar information completed. Doc. No. 1 at 3 Plaintiffs paid a rental fee and security deposit by wire transfer from Massachusetts before they left for Paris. Id. According to the rental agreement, the check in time was 2:00 pm and a local agent of HRC would meet Plaintiffs at the property. Id.

Plaintiffs arrived in Paris at 2:35 pm on July 11, 2013, and contacted HRC's agent who said she would arrive shortly. Id. Plaintiffs went to the building in which French Flair is located. They entered the common area of the building using a code provided to them by HRC. Id. No representative of HRC was present. Id. at 4. Plaintiffs called and emailed HRC several times but were left waiting in the common area of the property for "several hours." Id. While waiting, Plaintiff Stephen LaBollita descended a spiral staircase in the common area and fell, sustaining serious injuries. Id. Stephen LaBollita went to the hospital after some confusion over the ambulance with HRC and was diagnosed with a complete rupture of his quadriceps tendon requiring emergency surgery. Id.

Almost three years later, Plaintiffs filed suit against HRC and Vidal in the District of Massachusetts on July 8, 2016. Doc. No. 1. Plaintiffs allege negligence against HRC (Count 1) and Vidal (Count 2), negligent misrepresentation against HRC (Count 3) and Vidal (Count 4), breach of contract against HRC (Count 5), breach of warranty against HRC (Count 6) and Vidal (Count 7), loss of consortium against HRC (Count 8) and Vidal (Count 9).

Plaintiffs filed an affidavit of service as to HRC on October 5, 2016. Doc. No. 5. On October 20, 2016, Plaintiffs requested that the clerk enter default as to HRC. Doc. No. 6. On October 25, 2016, the clerk entered default. Doc. No. 7. On November 21, 2016, Plaintiffs moved for a default judgment as to HRC. Doc. No. 8. On January 12, 2017, the Court allowed this motion. Doc. No. 13, 14. However, no judgment entered against HRC. Rather, the Court

referred the matter to the Magistrate Judge for an assessment of damages hearing and recommendation. Doc. No. 15. On February 8, 2017, Magistrate Judge Bowler schedule an assessment of damages hearing for March 8, 2017; the Clerk mailed the notice of hearing to HRC that day. Doc. No. 16, 18. On the same day, Vidal's attorney entered a notice of appearance. Doc. No. 19. On March 2, 2017, HRC's attorneys entered notices of appearance and filed a motion to set aside the default judgment. Doc. Nos. 23, 24, 25. On March 2, 2017, Vidal filed a motion to dismiss for lack of personal jurisdiction. Doc. No. 30. Plaintiffs opposed both motions, Doc. Nos. 36, 37, and Defendants replied, Doc. Nos. 45, 46. Plaintiffs filed a surreply to the motion to dismiss for lack of personal jurisdiction. Doc. No. 51. On May 31, 2017, the Court heard oral argument on both motions. Doc. No. 56.

## ANALYSIS

A. Motion to Lift Default

While Defendants filed a motion to set aside the default judgment under Rule 60(b)(1), Rule 55(c) governs because no final judgment has entered. See Fed. R. Civ. P. 55(c) ("The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)."). The ruling on the motion for a default judgment was not itself a final judgment. The Court had reached no conclusion regarding damages. Nor had the Court entered a judgment let alone a final judgment under Rule 54(b). Thus, the less stringent Rule 55(c) standard applies.

"The demanding standards set by Rule 60(b) apply only in seeking relief from a final judgment." Fed R. Civ. P. 55 advisory committee note on 2015 amendment. "Good cause" under Rule 55(c) "is a liberal standard, 'but not so elastic as to be devoid of substance.'" Commerce Bank & Trust Co. v. Ria LLC, Civ. A. No. 4:14-cv-40140-TSH, 314 F.R.D. 338, 340 (D. Mass.

2016) (quoting Coon v. Grenier, 867 F.2d 73, 76 (1st Cir. 1989)). "Numerous factors are relevant to an analysis under Rule 55(c): whether the default was willful; whether setting aside the default would prejudice the adversary; whether a meritorious defense is presented; the strength of the proffered explanation for the default; the good faith of the parties; the amount of money involved; and the timing of the motion." Id. While those factors are relevant, however, "[t]he 'Rule 55(c) determinations are case-specific' and 'must, therefore, be made in a practical, commonsense manner, without rigid adherence to, or undue reliance upon, a mechanical formula.'" KPS & Assocs., Inc. v. Designs by FMC, Inc., 318 F.3d 1, 12 (1st Cir. 2003) (quoting Gen. Contracting & Trading Co. v. Interpole, Inc., 899 F.2d 109, 112 (1st Cir. 1990)). The First Circuit has noted that the policy considerations inherent in Rule 1 "are at their zenith in the Rule 55(c) milieu." Coon v. Grenier, 867 F.2d 73, 76 (1st Cir. 1989); see Fed. R. Civ. P. 1 ("These rules . . . should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

Plaintiffs argue only that the motion should be denied because HRC failed to show excusable neglect in reliance on the Rule 60(b) standard. However, Rule 55(c) directs the Court to consider other relevant factors as well. Here, the delay was short, a month and a half from the order entering default judgment and the motion to set aside the default judgment. There is little, if any, prejudice to Plaintiffs as the litigation has not proceeded, no hearing on the assessment of damages was held, and final judgment has not been entered. Additionally, the owner of HRC states that the papers she received did not include a summons and pages were missing. Doc. No. 27 at 3. She states that, while she knew that she had been sued in the US, she did not know when

5

or to whom she was meant to respond to. Id.[3] Finally, once HRC learned of the Court's ruling on the motion for a default judgment it filed the motion to vacate without delay. Under these circumstances and in light of the considerations of Rule 1, the Rule 55(c) motion, Doc. No. 25, is ALLOWED.

B. Motion to Dismiss for Lack of Personal Jurisdiction

"The plaintiff has the burden of establishing that jurisdiction over the defendant lies in the forum state." Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 34 (1st Cir. 2016). Under the prima facie method, the plaintiff must "proffer evidence which, taken at face value, suffices to show all facts essential to personal jurisdiction." Id. at 34. "It is not enough for [plaintiff] to 'rely on unsupported allegations in its pleadings.'" A Corp. v. All American Plumbing, 812 F.3d 54, 58 (1st Cir. 2016) (quoting Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006)) (alteration omitted). "Rather, [plaintiff] must put forward 'evidence of specific facts' to demonstrate that jurisdiction exists." Id. (quoting Platten, 437 F.3d at 134). The Court "must accept [plaintiffs'] properly documented evidentiary proffers as true and construe them in the light most favorable to [their] jurisdictional claim." A Corp, 812 F.3d at 58. The Court will "also consider facts offered by [defendants], to the extent that they are not disputed." Id. This prima facie method of determining whether Plaintiff has met its burden is the "least taxing" for Plaintiffs of the various methods available to the Court. Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008) (citing Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 84 (1st Cir. 1997)).

---

[3] In addition, the Court notes that the record of the correspondence between Plaintiff's counsel and HRC in September and October of 2016 demonstrates HRC assisting counsel, not evading, by identifying the contact information for the owner of French Flair, the contact information for the building association, and information regarding HRC's insurance carrier. See, e.g., Doc. No. 36-2.

6

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state." Baskin-Robbins, 825 F.3d at 34 (quoting Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995)). Plaintiffs must show that the Court's "assertion of personal jurisdiction over [defendants] would satisfy the requirements of both the Due Process Clause of the federal Constitution and the Massachusetts long-arm statute, Mass. Gen. Laws ch. 223A, § 3." Id. Massachusetts's long-arm statute is broad and permits the exercise of personal jurisdiction over "a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . transacting any business in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(a). Previously, the First Circuit stated that the Massachusetts Long Arm statute's reach was "coextensive" with the Due Process Clause while more recently it suggested that the statute may impose more restrictive limits. See A. Corp., 812 F.3d at 59. Following the First Circuit's lead, in this case, the Court need not attempt to sort out this potential tension because Plaintiffs fail to meet their burden under the Due Process Clause.

"The Due Process Clause of the Fourteenth Amendment requires that a defendant 'have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id. at 35 (quoting Int'l Shoe v. Washington, 326 U.S. 310, 316 (1945)). "This due process test is flexible and fact-specific, 'written more in shades of grey than in black and white.'" Id. (quoting Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999)). Plaintiffs assert only specific jurisdiction in this case. To show specific jurisdiction, Plaintiffs are required to show that each of three conditions is satisfied:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must

7

> represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must . . . be reasonable.

Copia Commc'ns, LLC v. AMResorts, LP, 812 F.3d 1, 4 (1st Cir. 2016) (quoting Phillips, 530 F.3d at 27) (alteration in original). "The purposeful availment prong 'represents a rough quid pro quo: when a defendant deliberately targets its behavior toward the society or economy of a particular forum, the forum should have the power to subject the defendant to judgment regarding that behavior.'" C.W. Downer & Co., 771 F.3d at 66 (quoting Carreras v. PMG Collins, LLC, 660 F.3d 549, 555 (1st Cir. 2011)). "The cornerstones of this inquiry are voluntariness and foreseeability." Id. (citing Daynard v. Ness, Motley, Loadholt, Richardson, & Poole, P.A., 290 F.3d 42, 61 (1st Cir. 2002)). Voluntariness requires that the defendant's contacts with the forum state "proximately result from actions by the defendant himself." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). The contacts must be deliberate and "not based on the unilateral actions of another party." Adelson v. Hananel, 510 F.3d 43, 50 (1st Cir. 2007) (citing Burger King, 471 U.S. at 475). Foreseeability requires that the contacts also must be of a nature that the defendant could "reasonably anticipate being haled into court there." Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)); see Phillips, 530 F.3d at 28. The purposeful availment inquiry "is focused on contacts between the defendant and the forum state, not between the defendant and the plaintiff." Id. at 67. "Questions of specific jurisdiction are always tied to the particular claims asserted." Phillips Exeter Academy v. Howard Phillips Fund, 196 F.3d 284, 289 (1st Cir. 1999). The Court thus considers personal jurisdiction for each claim separately.[4]

---

[4] Plaintiffs assert for all of their claims the idea of passive purposeful availment; under this theory, at some point HRC had so many Massachusetts customers and reviews from

HRC's argument for personal jurisdiction over Vidal rests entirely on HRC acting as Vidal's agent and personal jurisdiction being properly exercised over HRC. The Court will assume without deciding that HRC acted as Vidal's agent in every action it undertook described herein.

   1. Contract and Breach of Warranty Claims (Counts 5 and 6)

In the purposeful availment context, the First Circuit differentiates between longer-term contracts involving communication between the parties over a long period of time and contracts "of a short duration or quickly accomplished." C. W. Downer & Co., 771 F.3d at 67. The First Circuit describes C.W. Downer "as hinging on three factors: the defendant's in-forum solicitation of the plaintiff's services, the defendant's anticipation of the plaintiff's in-forum services, and the plaintiff's actual performance of extensive in-forum services." Copia Commc'ns, LLC, 812 F.3d at 6 (citing Cossart v. United Excel Corp., 804 F.3d 13, 21 (1st Cir. 2015)). Those factors are not present here. There is no evidence that HRC targeted Massachusetts; rather, the advertisements were posted on websites that advertise nationally or internationally. See Doc. No. 1 at 2 ("The Defendants advertise rental of multiple units at the Premises including French Flair, through various companies . . . and through written advertisements widely distributed online and available in Massachusetts."); cf. Metcalf v. Bay Ferries Ltd., 937 F. Supp. 2d 147, 155 (D. Mass. 2013) (holding that a Canadian ferry operator's ads targeted at Massachusetts residents and visiting Boston for a trade show on three separate

---

Massachusetts residents prominently displayed that they have purposefully availed themselves of the protection of Massachusetts laws even without directly targeting Massachusetts. It seems clear to the Court that purposeful availment must be purposeful. Without some type of targeted effort, perhaps even as simple as tailoring the website content to appeal to Massachusetts residents, HRC has not done anything purposeful. This is especially so for those websites Plaintiffs identify that are run by third parties.

9

occasions was sufficient to show purposeful availment). In A Corp., the Court found that a generally available website which "never mentions Massachusetts and affords no mechanism for Massachusetts residents to order any goods or services" with "no genuine 'interactive features'" functioned more as a "digital billboard, passively advertising the business and offering an email address, fax and phone number." A Corp., 812 F.3d at 60. While the website here is somewhat more interactive in that it permits an online inquiry, the Court does not find that the addition of an inquiry form (as differentiated from an order form which may be sufficient, see Venture Tape Corp. v. McGills Glass Warehouse, 292 F. Supp. 2d at 231 (D. Mass. 2003)) is sufficient to give rise to personal jurisdiction in Massachusetts.

In light of the Circuit's prior jurisdictional rulings, the nature of HRC's contacts with Massachusetts as well as the nature of the parties' relationship fails to support jurisdiction over HRC. The parties never contemplated and the contract did not provide for performance of any services by defendant in Massachusetts. Rather, the parties always intended all of HRC's performance to occur in France. The contract was short, obligating HRC to provide Plaintiffs the apartment for seven days, the communication between the parties was limited to signing the contract and clarifying the details of Plaintiffs' stay. Additionally, HRC did not target either Plaintiffs or Massachusetts. Cf. O'Connor v. Sandy Lane Hotel Co., Ltd., 496 F.3d 312, 318 (3d Cir. 2007) (finding jurisdiction over a foreign hotel for a claim concerning spa services because the hotel targeted the Pennsylvania plaintiffs for spa services, after they booked their stay, by mailing them brochures and exchanging phone calls about spa services).

The Court finds Phillips v. Prairie Eye Ctr., 530 F.3d 22 (1st Cir. 2008), particularly enlightening. In Phillips, an ophthalmologist from Massachusetts posted his resume on a job placement website. Id. at 25. He received an email invitation from the owner of Prairie Eye

Center in Illinois to interview in Illinois. Id. At some point before the interview, Prairie Eye learned that Phillips was from Massachusetts and arranged a flight from Massachusetts to Illinois for the interview. Id. The ophthalmologist flew to Illinois, interviewed for the job, and received an offer. Id. Prairie Eye mailed the ophthalmologist, in Massachusetts, an unsigned employment contract detailing the potential arrangement. Id. The two exchanged emails about the contract. Id. Prairie Eye sent three such emails to the ophthalmologist which he received in Massachusetts. Id. Thereafter, the parties signed the contract, but the relationship deteriorated before either side performed under the contract. Id. The ophthalmologist sued in Massachusetts. Id. The district court dismissed the claims for lack of personal jurisdiction over Prairie Eye and the First Circuit affirmed. The Court noted that "[i]t stretches too far to say that Prairie Eye, by mailing a contract with full terms to Massachusetts for signature and following up with three e-mails concerning the logistics of signing the contract, should have known that it was rendering itself liable to suit in Massachusetts." Id. at 29.

Phillips is analogous to the situation here—Plaintiffs filled out an online form requesting a reservation at the Paris property. Plaintiffs and Defendants exchanged some emails about the contract but the terms of the contract envisioned Defendant's performance outside of Massachusetts. Phillips was a somewhat stronger case for personal jurisdiction than this one. In that case the Defendant made the initial contact by reaching into Massachusetts to contact the Plaintiff. Here, Plaintiffs, from Massachusetts, reached out to a foreign Defendant. As in Phillips, "the defendant's awareness of the location of the plaintiff is not, on its own, enough to create personal jurisdiction over a defendant." Id. at 28.

In short, HRC's limited narrow contacts with Massachusetts are not sufficient to find that it purposefully availed itself of the privilege of conducting business in Massachusetts with

11

respect to its contract claim. As to the breach of warranty claims, the personal jurisdiction analysis would be the same and no party has argued otherwise. Thus, Plaintiffs fail to establish personal jurisdiction over HRC for the breach of contract (Count 5) and breach of warranty claims (Count 6).

2. Tort Claims

Plaintiffs' complaint is reasonably understood to plead two common-law negligence claims[5] (Counts 1 and 2) based on an improperly maintained staircase in the Paris property. These claims have no relationship to Massachusetts beyond the fact the Plaintiffs are from Massachusetts and made the reservation from Massachusetts. This is clearly insufficient to allow this Court to exercise jurisdiction as Plaintiffs have not shown that Defendants purposefully availed themselves of the protections of the laws of Massachusetts. See Rodriguez v. Samsung Electronics Co., Ltd., 827 F. Supp. 2d 47, 51 (D. Mass. 2011); cf. O'Connor, 496 F.3d at 318 ("Contact with vacationing Pennsylvanians is no substitute for contact with Pennsylvania."). The property (the staircase and building), the behavior (Stephen LaBollita walking on the stairs), the negligence (the poor design, structure or maintenance of the stairs), and the injury all occurred in Paris, France. By extension, the court also does not have jurisdiction over the loss of consortium claims (Counts 8 and 9). See O'Connor, 496 F.3d at 317 n.3 (finding that a loss of consortium claim factually overlaps with and is derivative of a negligence claim and thus does not require a separate personal jurisdiction analysis).

---

[5] At the hearing, Plaintiffs' counsel asserted that these claims were not common-law negligence claims under Massachusetts law, but rather equivalent negligence claims under French law. Nothing about these two counts, paragraphs 41 to 50, suggest a private French civil law negligence claim, assuming such a claim exists. In any event, Plaintiffs have not explained how any such claim would require different personal jurisdiction analysis than a common-law negligence claim. Thus, the Court will analyze the claims for personal jurisdiction as common-law negligence claims.

Plaintiffs' negligent misrepresentation claims (Counts 3 and 4), on the other hand, present a somewhat different issue. The law differentiates between intentional torts and torts grounded in negligence in the purposeful availment context. In the case of an intentional misrepresentation, "Where a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state." Ealing Corp. v. Harrods, Ltd., 790 F.2d 978, 983 (1st Cir. 1986) (quoting Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 664 (1st Cir. 1972)). Torts grounded in negligence, however, are not sufficient to confer jurisdiction. See Litchfield Fin. Corp. v. Buyers Source Real Estate Grp., 389 F. Supp. 2d 80, 85–86 (D. Mass. 2005) (collecting cases). Negligence-based torts "merely create[] the condition from which damage may later arise" rather than creating a cause of action at the moment the act is taken. Murphy, 460 F.2d at 664. "Subsequent decisions in the Massachusetts courts have adopted Murphy, carefully reading that decision as directed at intentional tortious misconduct (but not negligent conduct)." Neelon v. Krueger, Civ. A. No. 12-cv-11198, 2016 WL 3390686, at *5 (June 17, 2016). Plaintiffs' negligence claims are insufficient to confer specific personal jurisdiction in this Court. Thus, Plaintiffs have failed to establish specific personal jurisdiction over HRC as to their tort claims for negligence (Count 1), negligent misrepresentation (Count 3), and loss of consortium (Count 8). Defendant Vidal

Because Vidal had no contact with Massachusetts of his own, Plaintiffs' assertion of personal jurisdiction over him depends entirely on (a) Plaintiffs' establishing personal jurisdiction over HRC and (b) attributing all of HRC's contacts to Vidal on the theory that HRC acted as Vidal's agent. Without personal jurisdiction over HRC, Plaintiffs have failed to establish

personal jurisdiction over Vidal for negligence (Count 2), negligent misrepresentation (Count 4), breach of warranty (Count 7) and loss of consortium (Count 9).

　　　3. Jurisdictional Discovery

"In its broad discretion, the Court may allow jurisdictional discovery where the moving has made a 'colorable claim' of jurisdiction. Cambridge Pace Inv. Mgmt., Inc. v. Morgan Stanley & Co., Inc., 794 F. Supp. 2d 265, 267–68 (D. Mass. 2011) (citing United States v. Swiss Am. Bank, Ltd., 274 F.3d 617, 625–27 (1st Cir. 2001)). Plaintiffs have not explained what discovery they would request or why it would change the Court's analysis of the jurisdictional issue in their filings. At the hearing, Plaintiffs' counsel, for the first time, stated that they sought discovery as to the percent of HRC's customers and profits from Massachusetts as well as the contract between Vidal and HRC. Nothing before the Court suggests a material percentage of HRC's customers were from Massachusetts. The reviews Plaintiffs point to contain a relatively small number of Massachusetts residents (by Plaintiffs' count, of 38 reviews from the United States on PRC's website, 1 was identified as being from Massachusetts; on TripAdvisor, 9 reviews were from the United States and 3 were identified as being from Massachusetts, and on VRBO, 3 were from the United States and none of those were identified as being from Massachusetts, Doc. No. 51 at 6 n.1). Plaintiffs point to no evidence supporting the inference that nonreviewing customers are distributed in significantly different ratios than reviewing customers. Additionally, as there is no jurisdiction over HRC, the contract between Vidal and HRC is irrelevant. The Court sees no colorable claim for its exercising jurisdiction over Defendants and thus denies the request for jurisdictional discovery.

CONCLUSION

For the reasons stated above, Defendant's Motion to Vacate, Doc. No. 25, is ALLOWED. As the Court has no personal jurisdiction over Defendant HRC and, by extension, no personal jurisdiction over Defendant Vidal, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Doc. No. 30, is ALLOWED.

                                        SO ORDERED.

                                        /s/ Leo T. Sorokin
                                        Leo T. Sorokin
                                        United States District Judge